IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

WYNTON FEREBEE,
Plaintiff,

v. Civil No. 3:26cv160 (DJN)

RICHARD J. KNAPP
& ASSOCIATES, P.C., *et al.*,
Defendants.

**MEMORANDUM OPINION**

Plaintiff Wynton Ferebee ("Plaintiff") brings this class action lawsuit against Defendants Richard J. Knapp & Associates, P.C. ("Knapp") and ICAFS, Inc. d/b/a General Services Corporation ("GSC") (collectively, "Defendants"), alleging violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e and 1692f, and the Virginia Consumer Protection Act ("VCPA"), Va. Code §§ 59.1-200(A)(5), 59.1-200(A)(13), 59.1-200(A)(14). This matter comes before the Court on Defendant Knapp's Motion to Dismiss Count One of the Amended Complaint (ECF No. 21 ("Motion")), which seeks dismissal of the FDCPA claims against Knapp only. For the reasons set forth below, the Court will GRANT IN PART and DENY IN PART Knapp's Motion (ECF No. 21).[1]

---

[1] Knapp also moves the Court for a hearing on its Motion. (ECF No. 25.) The Court finds that the parties have adequately briefed all relevant issues and that a hearing will not aid the Court's resolution of the issues presented. Accordingly, the Court DENIES Knapp's motion for a hearing (ECF No. 25) and decides the Motion on the papers.

# I. BACKGROUND

## A. Factual Background

At this stage, the Court must accept as true the facts set forth in the Amended Complaint (ECF No. 16 ("Am. Compl."). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Against this backdrop, the Court accepts the following facts as alleged for purposes of resolving the instant motion.

### 1. GSC's Unpaid Rent Procedures and Knapp's Eviction Efforts

GSC manages and controls fourteen apartment complexes across the City of Richmond and Henrico and Chesterfield counties. (Am. Compl. ¶ 32.) GSC's standard lease specifies that rent is due on the first day of the month. (*Id.* ¶ 18.) If a tenant does not pay rent by the fifth of the month, GSC delivers to the tenant a Notice of Default ("Default Notice"). (*Id.* ¶ 19.)

The Default Notice itemizes monthly charges to the tenant's account, along with certain fees. (*Id.*) The charges include the base cost of monthly rent, a flat rate for water and sewer services, a gas utility fee, an environmental disposal fee and pest control. (*Id.* ¶ 51.) It also assesses a late fee consisting of 10 percent of the sum of the base rent and all additional fees. (*Id.*) Failure to pay this amount may result in referral of the tenant's account to GSC's legal counsel, Knapp, for eviction proceedings. (*Id.* ¶¶ 20–21.)

The Default Notice further states that attorney's fees will equal 25 percent of the total amount due to GSC — including the base rent, additional fees and the 10 percent late fee — and court costs of $62. (*Id.* ¶ 20.) GSC's form lease similarly authorizes a 25 percent attorney's fee, with the addition that such fees shall never be less than $100. (*Id.* ¶ 22.) A tenant may avoid paying the attorney's fee and court costs only by paying the full amount due to the landlord within five days of receiving the Default Notice. (*Id.* ¶ 21.)

If the tenant does not pay his balance within five days of receipt of the Default Notice, GSC refers the tenant's case to Knapp to begin eviction proceedings. (*Id.*) Upon receipt of an overdue tenant account from GSC, Knapp prepares a summons for unlawful detainer to seek the amounts due under the lease and for possession of the property. (*Id.* ¶ 28.) Knapp's summonses uniformly reiterate a request for attorney's fees in the amount stated on the Default Notice, again equal to 25 percent of the sum of the base rent, the late fee and other fees. (*Id.* ¶ 31.) Attorney's fees are assessed at the time that GSC refers the case to Knapp to begin eviction proceedings. (*Id.* ¶ 21.)

The Amended Complaint alleges that Knapp schedules unlawful detainer cases in batches of 20 to 40, thereby obtaining economies of scale and requiring little time to be expended on each case. (*Id.* ¶¶ 35–37.) One 40-case docket, according to Plaintiff, typically requires less than one hour of court time. (*Id.* ¶ 38.) Despite spending little time on each individual case, Plaintiff alleges that Knapp collects the full fee amount described above. (*Id.*)

**2. The Individual and Class Action Claims**

On April 22, 2023, Plaintiff and one of GSC's affiliates entered a thirteen-month lease for an apartment in Richmond (the "Lease"). (*Id.* ¶ 96.) The same parties later renewed the Lease for another thirteen months upon its expiration. (*Id.*) Shortly after entering into the Lease, Plaintiff lost his job and began struggling to pay rent on time. (*Id.* ¶ 97.) Plaintiff was often unable to pay his full rent, and GSC initiated eviction proceedings against him accordingly. (*Id.* ¶ 98.) Plaintiff was initially able to redeem his tenancy by paying his balance before the first court date. (*Id.*)

After his first year of tenancy, Plaintiff fell further behind on rent. (*Id.* ¶ 99.) Over the course of several months, Knapp obtained five judgments for possession against him. (*Id.*) In

November and December 2024 and in January 2025, Knapp filed three more eviction cases against Plaintiff. (*Id.* ¶ 100.) In those three actions, Plaintiff obtained legal counsel to challenge the amount of attorney's fees sought. (*Id.*)

On March 4, 2025, Knapp filed and served an Amended Bill of Particulars ("Bill of Particulars") in the three eviction cases in the Richmond General District Court ("Richmond GDC"). (*Id.* ¶ 106.) Knapp represented to the court that Plaintiff owed GSC a total of $6,475, inclusive of the disputed fees. (*Id.*)

Knapp further communicated to Plaintiff's counsel on March 18, 2025, that cessation of eviction efforts would be conditioned on the payment of $9,945.76, which included $625 in late fees and $2,145.56 in attorney's fees. (*Id.* ¶ 107.) That same day, Plaintiff paid GSC the requested sum to exercise his extended right of redemption and secure cancellation of the scheduled eviction. (*Id.*) This sum included the disputed fees, the allegedly inflated late fee, and the 25 percent attorney's fee. (*Id.*)

Plaintiff now brings Count One individually and on behalf of proposed classes of GSC tenants who, in the year preceding the filing of this lawsuit through the certification date, redeemed after unlawful detainer proceedings filed by Knapp and who paid attorney's fees or late fees that had not been awarded by judgment. (*Id.* ¶¶ 134–35.) As relevant here, Plaintiff alleges that, as to the attorney's fees and late fees, "[e]ach time that Knapp filed, mailed, or served an unlawful detainer summons as to Plaintiff and the putative class members, Knapp used 'false, deceptive, or misleading representation or means in connection with the collection'" of a debt in violation of §§ 1692e and 1692f of the FDCPA, because the amounts "exceeded the amount of such fees permissible under Virginia law." (*Id.* ¶ 113 (quoting 15 U.S.C. § 1692e).)

### B. Procedural History

On February 27, 2026, Plaintiff filed his Complaint (ECF No. 1), raising three counts for relief based on the above allegations. On June 18, 2026, Plaintiff filed an Amended Complaint, now raising four claims against Defendants. (ECF No. 16.) As relevant to the instant Motion, Count One brings FDCPA claims against Knapp only, alleging false or misleading representations and unfair or unconscionable means in connection with the collection of a debt. (Am. Compl. ¶¶ 133–43.)

On July 6, 2026, Knapp filed its Motion to Dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 21.) Knapp argues that Plaintiff's FDCPA claims fail, because Plaintiff has made no allegations that Knapp made false or misleading representations or employed unfair or unconscionable means in connection with the collection of a debt. (ECF No. 22 ("Mem. Supp.") at 3.) On July 20, 2026, Plaintiff responded in opposition. (ECF No. 23 ("Opp.").) On July 27, 2026, Defendants filed a reply (ECF No. 24 ("Reply")), rendering Defendants' Motion ripe for review.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve factual contests, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court accepts the plaintiff's well-pleaded allegations in the complaint as true and views the facts in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. The facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## III. ANALYSIS

The Court begins by addressing Knapp's argument that Plaintiff's FDCPA claims are time barred. Concluding that they are not, the Court proceeds to consider Knapp's contention that the FDCPA does not govern its conduct in this case. Finally, having concluded that the FDCPA does cover Knapp's litigation activities, the Court analyzes Plaintiff's FDCPA claims against Knapp under 15 U.S.C. §§ 1692e and 1692f.

### A. Plaintiff's Claims Are Not Time Barred

"An action to enforce any liability created by" the FDCPA "may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). A statute-of-limitations defense constitutes an affirmative defense. A motion to dismiss filed under Rule

12(b)(6) generally cannot reach the merits of an affirmative defense. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, a court may reach the merits of an affirmative defense where facts sufficient to rule on an affirmative defense are alleged in the complaint, but only "if all facts necessary to the affirmative defense clearly appear[] on the face of the complaint." *Id.* (internal quotation marks omitted).

Knapp first argues that Plaintiff's FDCPA claims are barred, because Knapp made all relevant pleadings and legal filings more than one year before Plaintiff filed his Complaint. (Mem. Supp. at 9.) Plaintiff filed his initial Complaint on February 27, 2026; thus, to succeed on his FDCPA claims, Plaintiff must identify acts that took place on or after February 27, 2025. Knapp points to the five judgments for possession in eviction proceedings filed in the Richmond GDC in 2023 or 2024, the Default Notice sent to Plaintiff in November 2024, the three eviction cases filed from November 2024 through January 2025, and three actions against Plaintiff occurring no later than February 25, 2025, to argue that all relevant conduct by Knapp occurred more than one year before the Complaint was filed. (*Id.* at 9–10.)

Plaintiff's Amended Complaint, however, identifies three actions occurring within the limitations period: the March 4, 2025 Bill of Particulars; the March 18, 2025 email from Knapp conditioning cancellation of the eviction on payment of $9,945.76; and Plaintiff's March 18, 2025 redemption payment. (Am. Compl. ¶¶ 106–07.) Knapp nevertheless dismisses these communications as untimely, because they merely "reiterate[] claims made prior to the statutory one-year period" of which "Plaintiff would have had prior notice." (Mem. Supp. at 10.)

Knapp's argument cannot be reconciled with binding Fourth Circuit precedent. The Supreme Court has explained that § 1692k(d) "unambiguously sets the *date of the violation* as the event that starts the one-year limitations period." *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019)

(emphasis added). From this premise, the Fourth Circuit has squarely rejected the notion that the FDCPA "suggests that 'similar' violations should be grouped together and treated as a single claim" for statute of limitations purposes, as Knapp suggests. *Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 407 (4th Cir. 2020). Instead, "Section 1692k(d) establishes a separate one-year limitations period for each violation of the FDCPA." *Id.*

Here, the Amended Complaint alleges discrete acts within the limitations period — the March 4 Bill of Particulars, the March 18 payment demand, and the March 18 redemption payment — and alleges that each violated the FDCPA. The FDCPA contains no "safe harbor for unlawful debt collection activity" such that "so long as a debtor does not initiate suit within one year of the first violation, a debt collector [is] permitted to violate the FDCPA with regard to that debt indefinitely and with impunity." *Id.* Instead, each alleged unlawful debt collection activity triggers its own limitations period. Accordingly, although alleged violations occurring before February 27, 2025 cannot independently support FDCPA liability, they do not render Knapp's alleged March 2025 violations untimely. Section 1692k(d) therefore does not bar Plaintiff's FDCPA claims.

### B. Plaintiff Plausibly Alleges That Knapp Misrepresented the Amount or Legal Status of the Debt in Violation of § 1692e

The FDCPA "is a strict liability statute that prohibits false or deceptive representations in collecting a debt, as well as certain abusive debt collection practices." *McLean v. Ray*, 488 F. App'x 677, 682 (4th Cir. 2012). "Attorneys seeking the repayment of a debt on behalf of a client are debt collectors within the ambit of the FDCPA." *Id.* (citing *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995)). Section 1692e forbids a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The provision provides examples of violative conduct. *Id.* § 1692e(1)–(16). As

relevant here, § 1692e(2)(A) specifically prohibits false representations of "the character, amount, or legal status of any debt." *Id.* § 1692e(2)(A). Plaintiff alleges that Knapp rendered such a false representation by demanding attorney's fees and late fees that are not permitted by Virginia law. (Am. Compl. ¶ 113.)

### 1. Section 1692e(2)(A) Reaches Misrepresentations About Amounts Not Collectible Under State Law

Knapp argues that the FDCPA does not convert a dispute over the validity of lease terms into a debt-collection violation. Pointing to the word "Practices" in the statute's title, Knapp contends that the FDCPA regulates only "how [a debt] collector goes about collecting on a debt, rather than whether that underlying debt is in fact enforceable under state law." (Mem. Supp. at 13.) According to Knapp, because the disputed fees were disclosed and agreed to by Plaintiff in the Lease, Plaintiff fails to allege that Knapp made a materially false, deceptive, or misleading representation. (*Id.* at 15.) Instead, Knapp asserts that Plaintiff's allegations pertain only to the substantive terms of the Lease, and not to communications or misrepresentations by Knapp. (*Id.*) Therefore, the argument goes, because Knapp only made efforts to collect debts that were authorized by the Lease, FDCPA liability does not lie.

Knapp's argument fails due to 15 U.S.C. § 1692e(2)(A)'s broad reach. Congress specifically named falsely representing the "character, amount, or legal status of any debt" as an abusive collection practice. 15 U.S.C. § 1692e(2)(A). And the "legal status" of a debt necessarily depends on whether applicable law permits the amount demanded. So, § 1692e(2)(A) reaches representations that a debtor presently owes an amount that applicable law does not permit the collector to demand. *See Coyne v. Midland Funding LLC*, 895 F.3d 1035, 1038 (8th Cir. 2018) (holding that "a false representation of the amount of a debt that overstates what is owed under state law materially violates 15 U.S.C. § 1692e(2)(A)" where a

debt collector represented that plaintiff owed compound interest barred by state law); *Shula v. Lawent*, 359 F.3d 489, 492 (7th Cir. 2004) (holding that debt collector violated § 1692e where it demanded payment of a debt that was not permitted by state law).

Therefore, as the predicate question to whether Plaintiff plausibly alleges a § 1692e(2)(A) violation, the Court must look to whether the amounts demanded by Knapp were legally recoverable under Virginia law. *Galdamez v. I.Q. Data International, Inc.*, 170 F. Supp. 3d 890 (E.D. Va. 2016), is instructive. In that case, a landlord initiated collection proceedings against its former tenant, asserting that the tenant owed unpaid rent, utility bills and charges for minor damages to the apartment. *Id.* at 891. The defendant debt collector sent a letter demanding the unpaid balance for rent and other charges in addition to interest due on the debt. *Id.* at 891–92. The plaintiff alleged that such interest was not due or owing under Virginia law. *Id.* at 892.

At the outset of its § 1692e analysis, the court explained that if the defendant debt collector was correct in its view that Virginia law permitted the charging of interest on the debt, then the collection letter would not be false or misleading under § 1692e. *Id.* at 893. Therefore, the court looked to Virginia law to determine whether the interest was in fact legally permissible, and thus whether the debt collector's conduct violated § 1692e. *Id.* After reviewing the relevant state statutes and concluding that Virginia law did not automatically authorize the interest that the debt collector represented as accruing, the court denied the debt collector's motion to dismiss the tenant's FDCPA claims. *Id.* at 893–96. So too here, the Court must look to Virginia law to determine if the fees sought were authorized under that law, which finding, in turn, determines whether Knapp made a false representation as to the legal status of the attorney's fees and the late fees.

Knapp urges that this view of the FDCPA cannot be correct, because it yields an "absurd result" for Plaintiff to purposefully enter into a contract requiring late fees and attorney's fees, only to then claim that Knapp misled Plaintiff by attempting to enforce those very terms. (Mem. Supp. at 13.) Knapp also adds that FDCPA liability cannot be premised on bringing a lawsuit that ultimately turns out unsuccessful. (*Id.* (citing *Heintz v. Jenkins*, 514 U.S. 291, 295–96 (1995).) In Knapp's view, the statute should not be read to render "every single Unlawful Detainer and every suit against a tenant for back rent subject to FDCPA allegations that have to be tried to conclusion." (*Id.*) Therefore, because Knapp's conduct was limited to reciting the terms of the Lease and attempting to enforce those terms, it argues that Plaintiff's FDCPA claims fail.

The Court agrees with Knapp on the limited premise that "the fact that a lawsuit turns out ultimately to be unsuccessful [does not], by itself," amount to an FDCPA violation. *Heintz*, 514 U.S. at 296. But Knapp misses the distinction between requesting relief that applicable law permits and falsely representing an amount as presently, legally owed when applicable law does not so provide. For example, in *Elyazidi v. SunTrust Bank*, the contract governing the dispute authorized "attorney's fees up to 25 percent, or an amount as permitted by law, of the amount owed." 780 F.3d 227, 230 (4th Cir. 2015). Accordingly, the debt collector sought from the debtor a 25 percent attorney's fee. *Id.* Notably, the collection notice itself stated that the debtor "owe[d]" the requested attorney's fees, language that the Fourth Circuit acknowledged "suggest[ed] perhaps that the requested attorney's fees were presently due." *Id.* at 235. But the court declined to read that language in isolation. The court instead read the demand letter in the context of an accompanying affidavit making clear that "the [25 percent] figure was merely an estimate of an amount counsel expected to earn in the course of the litigation." *Id.* at 234.

On these facts, the Fourth Circuit held that the debt collector's assertion of the 25 percent attorney's fee was not misleading under § 1692e, because "the debt collector sought no more than applicable law allowed" and the amount sought was a reasonable estimate of what counsel expected to earn during the litigation. *Id.* Critically, the documents viewed as a whole — the contract, debt collection notices and affidavit — made clear that the 25 percent figure represented a prospective estimate rather than an amount already incurred and presently due. *Elyazidi* thus illustrates the distinction between representing an amount as presently owed and requesting a permissible, prospective award that the debtor would understand had not been yet incurred. Under the Fourth Circuit's rationale, the former triggers FDCPA liability if applicable law does not in fact permit the amount demanded.

Therefore, returning to the instant case, the Court must determine the amounts of attorney's fees and late fees that Virginia law permitted Knapp to demand to assess Plaintiff's § 1692e claims.

**2. The Attorney's Fees Plausibly Violate Virginia Law, But the Late Fees Were Not Unlawful and Therefore Do Not Support § 1692e Liability**

"Whether a communication is false, misleading, or deceptive in violation of § 1692e is determined from the vantage of the 'least sophisticated consumer.'" *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 394 (4th Cir. 2014). This represents "an objective standard that evaluates § 1692e claims based upon how the least sophisticated consumer would interpret the allegedly offensive language." *Id.* at 394–95. Courts applying the standard "consider how a 'naïve' consumer would interpret the statement," but "do not give credit to bizarre or idiosyncratic interpretations; we assume a quotient of reasonableness and a basic level of understanding and willingness to read with care." *Elyazidi*, 780 F.3d at 234 (cleaned up).

**a. Attorney's Fees**

The Virginia Residential Landlord and Tenant Act ("VRLTA") provides that a "landlord may recover damages and obtain injunctive relief for any noncompliance by the tenant with the rental agreement or § 55.1-1227" of the same. Va. Code Ann. § 55.1-1245(H). The landlord is "entitled to recover from the tenant . . . reasonable attorney fees as contracted for in the rental agreement or as provided by law." *Id.* Plaintiff argues that the 25 percent attorney's fee provided for in the Lease and demanded by Knapp in the unlawful detainer proceedings is unlawful, because "[t]he VRLTA does not affirmatively authorize a flat 25% fee — it permits only 'reasonable' attorney's fees." (Opp. at 13 (citing Va. Code Ann. § 55.1-1245(H)) (other citations omitted).)

The Supreme Court of Virginia has identified a non-exhaustive list of factors for courts to consider when weighing the reasonableness of attorney's fees: (1) the time and effort expended by the attorney, (2) the nature of the services rendered, (3) the complexity of the services, (4) the value of the services to the client, (5) the results obtained, (6) whether the fees incurred were consistent with those generally charged for similar services, and (7) whether the services were necessary and appropriate." *Lambert v. Sea Oats Condo. Ass'n, Inc.*, 798 S.E.2d 177, 183 (Va. 2017). Virginia law thus makes the reasonableness of attorney's fees a fact-intensive inquiry.

Accepting Plaintiff's factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), the Court cannot find, at the pleadings stage, that Plaintiffs have failed to assert a claim on the basis that Knapp's attorney's-fee demand was unreasonable. Knapp reportedly filed roughly 4,700 unlawful detainer proceedings in the Richmond area alone in 2024. (Am. Compl. ¶ 35.) Knapp files the actions in batches of 20 to 40 and allegedly spends very little time on each case individually. (*Id.*

¶¶ 36–37.) To illustrate the disparity between its charged fees and the time actually expended, Plaintiff alleges that Knapp would have had to expend 44 hours of attorney time at $375.00 per hour to justify the full amount collected on one 42-case docket on January 8, 2025 — all for approximately one hour of court time. (*Id.* ¶¶ 38, 105.) Plaintiff further alleges that Knapp's timekeepers do not keep contemporaneous time records for individual unlawful detainers. (*Id.* ¶ 23.) Notwithstanding these practices, Knapp uniformly demands 25 percent of the tenant's outstanding balance in every unlawful detainer case. (*Id.* ¶ 31.) These facts make it at least plausible that a 25 percent attorney's fee generated an amount exceeding the reasonable value of the legal work, in violation of the VRLTA.

Courts in the Fourth Circuit have denied motions to dismiss on similar factual allegations. For example, the plaintiff in *Lord v. Senex Law, P.C.* alleged that the defendant debt collector "churn[ed] out unlawful detainers across Virginia against thousands of Virginians, with little to no attorney involvement for each action." No. 7:20CV00541, 2021 WL 3622148, at *8 (W.D. Va. Aug. 16, 2021). The defendant's efforts were limited to "boilerplate notices that any non-attorney debt collector could complete, print, and deliver to a tenant," and yet, it demanded a flat $30 attorney's fee in every unlawful detainer case. *Id.* at *2. The court ruled that "[t]hese allegations, construed as true, point to . . . a 'false, deceptive, or misleading representation or means in connection with the collection of any debt' in violation of § 1692e(2)," and denied the motion to dismiss as to plaintiff's claims under § 1692e(2). *Id.* at *8 (quoting 15 U.S.C. § 1692e(2)). The same logic applies with equal force in this case.

Nor are Knapp's communications analogous to those in *Elyazidi*. In that case, the totality of the debt collector's communications showed that the 25 percent attorney's fee "was merely an estimate of an amount counsel expected to earn in the course of the litigation." *Id.* at 234. The

debt collector explained that 25 percent was reasonable, because one hour had already been expended in the representation, three hours were anticipated for appearances, and another twenty hours were anticipated for execution. *Id.* at 231. Therefore, the Fourth Circuit found that the debt collector made no false or misleading representation for purposes of § 1692e(2), because it "sought no more than applicable law allowed." *Id.* at 234.

Here, by contrast, Knapp's communications contained no such limiting language. It repeatedly conditioned cancellation of eviction proceedings on payment of the 25 percent attorney's fee, regardless of whether that amount was reasonable relative to the amount of work performed. Viewed from the perspective of the least sophisticated consumer, those communications could reasonably be understood as representing that the full 25 percent fee was presently and legally due — not merely a request for an amount that a court might later determine to be reasonable. And the payment of the fee itself eliminates much of the future litigation that could otherwise justify the fee, as was the case in *Elyazidi*. Therefore, against the factual allegations described above, the Court finds that Plaintiff plausibly pleads that Knapp's representation that the full 25 percent was legally and presently owed constitutes a false or misleading representation of the amount or legal status of Plaintiff's debt under § 1692e(2)(A).

Knapp makes much of a 2016 Richmond GDC standing order which finds that in "*uncontested* cases, where the instrument provides only that a prevailing party may recover 'reasonable' attorneys fees, twenty-five percent (25%) is presumed to be a reasonable fee in collection cases in the Richmond area." (ECF No. 22-1 (emphasis in original).) Knapp takes this order to broadly establish "the reasonableness of 25% attorney's fees for a lease agreement." (Reply at 2.) It does not.

Start with the fact that Plaintiff's case was contested. He retained counsel specifically to challenge the fees, and the Richmond GDC bifurcated the possession portion of the case from the issue of damages and continued the latter for trial. (Am. Compl. ¶ 100.) What's more, Plaintiff's Lease did not purport to authorize "reasonable" attorney's fees, as the standing order covers, but merely fixes the amount at 25 percent. (*Id.* ¶ 31.) But more fundamentally, the standing order creates a presumption, not a substantive rule making 25 percent reasonable in every case. It cannot establish the reasonableness of Plaintiff's fees here as a matter of law on a motion to dismiss. Accordingly, the Court will deny Knapp's motion to dismiss as to Plaintiff's claims concerning attorney's fees.

**b. Late Fees**

The Court next turns to Plaintiff's argument that Knapp further violated the FDCPA by collecting from Plaintiff late fees measured against both the periodic rent and unpaid utilities. (Am. Compl. ¶ 114.) Plaintiff similarly argues that this practice violates § 1692e, because the VRLTA does not permit late fees to include any costs in addition to the base rent. (*Id.*)

The VRLTA broadly defines "rent" as "all money, other than a security deposit, owed or paid to the landlord under the rental agreement, including prepaid rent paid more than one month in advance of the rent due date." Va. Code Ann. § 55.1-1200. And "[n]othing in [the VRLTA] . . . prohibit[s] an owner, manager, or operator of a residential building from including water, sewer, electrical, natural gas, oil, or other utilities in the amount of rent as specified in the rental agreement or lease." *Id.* § 55.1-1212(I). Further, Virginia law caps late fees at "the lesser of 10 percent of the periodic rent or 10 percent of the remaining balance due and owed by the tenant." *Id.* § 55.1-1204(E).

Plaintiff contends that by using the term "periodic rent" as opposed to the broader term "rent" in the late-fee-cap provision, the legislature intended to exclude utilities and other separately itemized monthly charges from being subject to late fee charges. (Opp. at 12.) Thus, by levying the 10 percent late fee against the sum of the base rent and separate utility charges, Plaintiff's argument goes, Knapp demanded a greater late fee than Virginia law allows.

The VRLTA does not define "periodic rent" and neither party identifies any decision construing that term. But Plaintiff's argument that the legislature's use of "periodic rent," rather than "rent," narrows the scope of charges against which a late fee may be assessed does not withstand the statutory context. The VRLTA defines "rent" to mean "all money, other than a security deposit, owed or paid to the landlord under the rental agreement." Va. Code Ann. § 55.1-1200. Nothing about the adjective "periodic" suggests that the legislature intended to depart from that defined meaning. To the contrary, the VRLTA elsewhere uses "periodic" to describe the recurring installments in which rent is paid. When no written rental agreement is offered, for example, "[r]ent shall be paid in 12 equal periodic installments." *Id.* § 55.1-1204(C)(3). And in the section immediately preceding the late-fee cap, the VRLTA provides that "periodic rent is payable at the beginning of any term of one month or less and otherwise in equal installments at the beginning of each month." *Id.* § 55.1-1204(D). In each instance, "periodic" describes the recurring schedule on which rent is payable, not the components that may constitute it.

That reading accords with the VRLTA's treatment of utilities. It expressly permits a landlord to include "water, sewer, electrical, natural gas, oil, or other utilities in the amount of rent as specified in the rental agreement or lease." *Id.* § 55.1-1212(I). Thus, where the rental agreement includes such utilities within the rent, the most natural reading of "periodic rent" in

§ 55.1-1204(E) is rent attributable to the relevant rental period — not, as Plaintiff proposes, only the portion attributable to base rent.

Accordingly, Knapp did not demand a late fee exceeding § 55.1-1204(E)'s statutory cap by calculating the fee against the sum of base rent and utilities. The Court will therefore dismiss Plaintiff's § 1692e claim to the extent that it rests on the challenged late fees.

### C. Plaintiff's § 1692f Claims Are Duplicative of His § 1692e Claims

Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. This includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). Plaintiff argues that Knapp independently violated § 1692f by assessing a flat 25 percent fee for cases requiring almost no attorney work and conditioning the cancellation of eviction proceedings on the payment of those fees. (Opp. at 12.) And because the VRLTA does not authorize a flat 25 percent fee, Plaintiff posits that Knapp violated § 1692f(1) by demanding an amount not permitted by law. (*Id.* at 13.)

Plaintiff's § 1692f claims do not survive Knapp's Motion to Dismiss. The Fourth Circuit has explained that, because "courts use § 1692f to punish conduct that the FDCPA does not specifically cover," a plaintiff alleging violation of § 1692f may not "rely on conduct that is covered by § 1692e" without "alleg[ing] any separate or distinct conduct to support a § 1692f violation." *Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013). Here, Plaintiff's § 1692f claims rely on the same alleged conduct as the § 1692e claim — the collection of fees that were not authorized by Virginia law. The Court will accordingly dismiss Plaintiff's § 1692f claim.

## IV. CONCLUSION

For the reasons set forth above, the Court will GRANT in part and DENY in part Defendants' Motion to Dismiss (ECF No. 21). This case shall proceed on Count One against Knapp, though only under 15 U.S.C. § 1692e and only on the basis of Knapp's demands for attorney's fees.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: September 15, 2026